﻿Citation Nr: AXXXXXXXX
Decision Date: 11/30/20 Archive Date: 11/30/20

DOCKET NO. 190313-6074
DATE: November 30, 2020

REMANDED

Entitlement to service connection for a left wrist disorder is remanded.

Entitlement to service connection for bilateral shoulder disorders is remanded.

Entitlement to service connection for diabetes mellitus, type II (DMII) is remanded.

REASONS FOR REMAND

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program, RAMP, the Rapid Appeals Modernization Program.

The Veteran served on active duty from February 1981 to March 1985. 

The Veteran selected the Higher-Level Review lane when he opted-in to the AMA review system in February 2018 by submitting a Rapid Appeals Modernization Program (RAMP) election form. Accordingly, the September 2019 higher level review rating decisions considered the evidence of record as of the date VA received the RAMP election form. The Veteran timely appealed that rating decision to the Board and requested the hearing with evidence submission review option. See March 2019 VA Form 10182. While it appears that the Veteran submitted additional evidence following the September 2018 higher level review rating decision and prior to his August 2020 Board hearing, this evidence is duplicative of the evidence previously of record. Furthermore, he was informed at the Board hearing that, if there was any evidence that was nonduplicative, such evidence would need to be resubmitted during the 90-day period following the hearing. Following the Board hearing, no additional evidence has been received. 

As an initial matter, the Board observes that service connection for bilateral shoulder disorders was initially denied in a July 2016 rating decision and service connection for DMII was initially denied in an October 2014 rating decision. The Board notes that the September 2018 higher level review rating decision on appeal did not specifically address the claims for service connection in the context of a whether new and relevant evidence had been submitted to readjudicate the claims. Nevertheless, even though there has not been an explicit favorable finding that new and relevant evidence had been received to reopen the claims, the Board finds that the Agency of Original Jurisdiction (AOJ) action in addressing the claims on the merits implicitly shows that it considered sufficient evidence had been received to readjudicate the claims on the merits. Therefore, the Board need not address whether there was new and relevant evidence to readjudicate these claims and will consider these claims on the merits.

The AOJ also made favorable findings that the Veteran had current diagnoses for the left wrist, bilateral shoulders, and DMII. See September 2018 higher level review rating decision.

1. Entitlement to service connection for left wrist disorder, bilateral shoulder disorders, and DMII are remanded.

The Board finds that the above issues must be remanded to correct a pre-decisional duty to assist errors. 38 C.F.R. § 20.802(a). In pertinent part, the evidence of record shows current diagnoses for a left wrist disorder, bilateral shoulder disorders, and DMII. The Veteran and his private physician have also indicated that his left wrist and bilateral shoulder disorders occurred during service as a result of an incident where he lost control of a bulldozer and crashed. See March 2016 Statement in Support of Claim and June 2017 Dr. J.L.L. records. The Veteran also provided evidence that suggested his DMII may be associated with his service-connected lumbar spine and knee disorders. In spite of this evidence, the Veteran has not yet been afforded VA examinations for these claims. See McLendon v. Nicholson, 20 Vet. App. 79, 83 (2006). Accordingly, the Veteran must be provided VA examinations consistent with the directives herein.

The Board acknowledges Dr. J.L.L.’s June and September 2017 positive nexus statements that the Veteran’s shoulder and wrist diagnoses are related to the motor vehicle accident (MVA) that occurred in 1983. However, in rendering these opinions, the private physician did not provide any rationale or explanation. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008). As a result, they are inadequate medical opinions.

The Board also acknowledges that in July 2015, the Veteran’s private physician stated that the Veteran had limited ability to exercise due to knees and lumbar spine and that this was not solely responsible for DMII. See July 2015 Dr. M.O. records. The Veteran also indicated that his limited ability to exercise caused him to gain weight and had contributed to his DMII. See August 2020 Board Hearing Transcript. Such evidence suggests a correlation between the Veteran’s limited ability to exercise due to service-connected disabilities and his DMII. The Board notes that, while obesity or being overweight is not a disability that qualifies for service connection and does not qualify as an in-service event to warrant service connection for another disability, it can act as an intermediate step to establish service connection for another disability as secondary to an already service-connected disability under certain circumstances. Here, obesity or being overweight would be an intermediate step in establishing secondary service connection for DMII if: 1) the Veteran’s service-connected lumbar spine disorder and/or knee disorders caused or aggravated his obesity/being overweight; 2) obesity/being overweight was a “substantial factor” in the development of DMII; and 3) DMII would not have occurred but for the obesity/being overweight caused by the service-connected chronic lumbar spine disorder and/or knee disorders. Thus, on remand, the VA examiner must address these questions.

The Board also acknowledges that the Veteran’s service treatment records (STRs) appear to be incomplete. In that regard, the record shows a July 1980 enlistment examination but there are no other STRs located in the claims file. The Board notes that requests were made to obtain the Veteran's service medical records. However, there is no Memorandum of Formal Finding of Unavailability of records for the STRs. Therefore, remand is required for the AOJ to attempt to secure the STRs. If unable to do so, a Memorandum of Formal Finding of Unavailability of Service Treatment Records must be prepared and sent to the Veteran.

The matters are REMANDED for the following actions:

1. Undertake all appropriate action to obtain the Veteran's STRs from whatever appropriate source for the full period of active service. If no records are obtained, prepare a Memorandum of Formal Finding of Unavailability of Service Treatment Records outlining the steps taken to retrieve the Veteran's STRs, and notify the Veteran in accordance with VA regulations, giving the Veteran adequate time to respond.

2. Following the record development above, obtain a VA examination and opinion from an appropriate examiner to determine the nature and etiology of the Veteran’s claimed left wrist disorder. The claims folder (including a copy of this remand) must be provided to and reviewed by the examiner as part of the examination. All indicated tests should be accomplished and all clinical findings reported in detail.

a) The examiner should provide a diagnosis for any current left wrist disability. 

b) The examiner should opine as to whether it is at least as likely as not (i.e., 50 percent probability or greater) that any diagnosed left wrist disorder had its onset in or is otherwise related to the Veteran’s active duty service. 

In rendering the above opinion, the examiner must specifically consider and discuss the Veteran’s testimony that he injured his left wrist during an MVA in April 1983. The examiner is advised that the Veteran is competent to report his symptoms/history and that such reports must be acknowledged and considered in formulating any opinion. If his reports are discounted, the examiner should provide a reason for doing so. 

A rationale for all requested opinions shall be provided. If the examiner cannot provide an opinion without resorting to mere speculation, he or she shall provide a complete explanation stating why this is so. In so doing, the examiner shall explain whether the inability to provide a more definitive opinion is the result of a need for additional information or that he or she has exhausted the limits of current medical knowledge in providing an answer to that particular question.

3. Following the record development above, obtain a VA examination and opinion from an appropriate examiner to determine the nature and etiology of the Veteran’s claimed bilateral shoulder disorders. The claims folder (including a copy of this remand) must be provided to and reviewed by the examiner as part of the examination. All indicated tests should be accomplished and all clinical findings reported in detail.

a) The examiner should provide a diagnosis for any current left and/or right shoulder disorder. 

b) The examiner should opine as to whether it is at least as likely as not (i.e., 50 percent probability or greater) that any diagnosed left and/or right shoulder disorder had its onset in or is otherwise related to the Veteran’s active duty service. 

In rendering the above opinion, the examiner must specifically consider and discuss the Veteran’s testimony that he injured his shoulders during an MVA in April 1983. The examiner is advised that the Veteran is competent to report his symptoms/history and that such reports must be acknowledged and considered in formulating any opinion. If his reports are discounted, the examiner should provide a reason for doing so. 

A rationale for all requested opinions shall be provided. If the examiner cannot provide an opinion without resorting to mere speculation, he or she shall provide a complete explanation stating why this is so. In so doing, the examiner shall explain whether the inability to provide a more definitive opinion is the result of a need for additional information or that he or she has exhausted the limits of current medical knowledge in providing an answer to that particular question. 

4. Following the development above, obtain a VA medical opinion from an appropriate examiner to determine the nature and etiology of the Veteran’s DMII. The claims folder (including a copy of this remand) must be provided to and reviewed by the examiner as part of the examination.

a) The examiner must provide an opinion as to whether it is at least as likely as not (i.e., 50 percent probability or greater) that the Veteran’s DMII is caused or aggravated by the Veteran’s service-connected chronic lumbar spine and/or bilateral knee disorders. Aggravation in this context is defined as any increase in disability.

b) The examiner must also provide an opinion as to whether it is at least as likely as not (i.e., 50 percent probability or greater) that the Veteran’s service-connected lumbar spine and/or bilateral knee disorders caused the Veteran to be obese or overweight and, if so, whether the Veteran’s obesity or being overweight was a substantial factor in the development of his DMII, such that the DMII would not have occurred but for obesity or being overweight.

A rationale for all requested opinions shall be provided. If the examiner cannot provide an opinion without resorting to mere speculation, he or she shall provide a complete explanation stating why this is so. In so doing, the examiner shall explain whether the inability to provide a more definitive opinion is the result of a need for additional information or that he or she has exhausted the limits of current medical knowledge in providing an answer to that particular question. 

 

 

A. ISHIZAWAR

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board P. E. Metzner, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.